1

2

3

4

5

6

7

8               UNITED STATES DISTRICT COURT
          WESTERN DISTRICT OF WASHINGTON
9                       AT TACOMA

10

MEGAN M. HOWARD and CHRISTOPHER
11 S. HOWARD, individually and on behalf of
their marital community,                        Case No.  05-5768 RJB
12
          Plaintiffs,
13                                              ORDER DENYING MOTION FOR
          v.                                    PARTIAL SUMMARY JUDGMENT
14
THE UNITED STATES OF AMERICA,
15
          Defendant.
16

17        This matter comes before the Court on the plaintiffs' Motion for Partial Summary Judgment

18 (Dkt. 32-1). The Court has considered the pleadings filed in support of and in opposition to the

19 motion and the file herein.

20                          **I. FACTUAL BACKGROUND**

21        Plaintiff Megan Howard underwent a surgical procedure for gastroesophageal reflux disease at

22 the Bremerton Naval Hospital on July 16, 2004. Dkt. 32-2, Exh. 1 at 1. Ms. Howard was otherwise

23 healthy and a nonsmoker. Dkt. 32-2, Exh. 4 at 35, Exh. 1 at 1.

24        On July 21, 2004, Ms. Howard presented at the Bremerton Naval Hospital General Surgical

25 Clinic for a followup examination and reported pain in her arm. Dkt. 32-2, Exh. 1 at 1. She was

26 instructed to apply warm compresses to her arm, increase physical activity, and slowly advance her

27 diet. Dkt. 32-2, Exh. 1 at 1.

28

ORDER
Page - 1

1    On the way home from the clinic, Ms. Howard collapsed and was transported to the

2  Bremerton Naval Hospital Emergency Department by aid unit. Ms. Howard underwent several tests in

3  the emergency room, including a D-dimer blood test to rule out a pulmonary embolism. Dkt. 32-2,

4  Exh. 1 at 1. The result of Ms. Howard's first D-dimer test, at 5:23 p.m., was erroneously reported as

5  less than .22, a level considered normal. *Id.*

6    Ms. Howard was taken to the operating room for an exploratory laparotomy, which is a

7  surgical incision in the abdomen, to determine whether she was bleeding internally. *See id.* Dr. Paul

8  Bown performed the procedure. *See* Dkt. 40-2. The laparotomy revealed no internal bleeding. Dkt.

9  32-2, Exh. 1 at 1. Ms. Howard was given Heparin, treatment for a pulmonary embolism,

10  intravenously. *Id.*; Dkt. 40-2 at 7.

11    Ms. Howard was transported to the intensive care unit. Dkt. 32-2, Exh. 1 at 1. She became

12  unstable and did not have a pulse. *Id.* She was then resuscitated. *Id.* Another D-dimer test was

13  performed at 8:55 p.m., and Ms. Howard's D-dimer was reported at 20.0. *Id.*

14    Ms. Howard was released from the Bremerton Naval Hospital on July 30, 2004. *Id.* The

15  discharge diagnoses were listed as massive pulmonary embolism and exploratory laparotomy. *Id.* at 2.

16  ## II. PROCEDURAL BACKGROUND

17    On November 28, 2005, Ms. Howard and her husband filed suit in federal court asserting that

18  the care she received at the Bremerton Naval Hospital was negligent under the theory of *res ipsa*

19  *loquitur*. Dkt. 1. The plaintiffs now move for judgment as a matter of law on the issues of duty,

20  breach, and proximate cause. Dkt. 32-1 at 1.

21  ## III. DISCUSSION

22  **A. SUMMARY JUDGMENT STANDARD**

23    Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and

24  admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

25  material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

26  The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a

27  sufficient showing on an essential element of a claim in the case on which the nonmoving party has the

28  burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact

ORDER
Page - 2

1  for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non

2  moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)

3  (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical

4  doubt."). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if

5  there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve

6  the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W.*

7  *Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

8       The determination of the existence of a material fact is often a close question. The court must

9  consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a

10  preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*,

11  809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving

12  party only when the facts specifically attested by that party contradict facts specifically attested by the

13  moving party. The nonmoving party may not merely state that it will discredit the moving party's

14  evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec.*

15  *Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, non specific statements in

16  affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497

17  U.S. 871, 888-89 (1990).

18  **B. MEDICAL MALPRACTICE**

19       In Washington, malpractice suits are governed by the statutory framework in RCW 7.70 *et*

20  *seq. Miller v. Jacoby*, 145 Wn.2d 65, 72 (2001). If the plaintiff alleges that the health care provider

21  failed to adhere to the accepted standard of care, the plaintiff must demonstrate the following:

22       (1) The health care provider failed to exercise that degree of care, skill, and learning expected
         of a reasonably prudent health care provider at that time in the profession or class to which he
23       belongs, in the state of Washington, acting in the same or similar circumstances;

24       (2) Such failure was a proximate cause of the injury complained of.

25  RCW 7.70.040.

26       **1. Res Ipsa Loquitur**

27       The plaintiffs move for partial summary judgment on the issues of duty, breach, and proximate

28

ORDER
Page - 3

1   cause, contending that the application of *res ipsa loquitur* establishes that they are entitled to

2   judgment as a matter of law. Dkt. 32-1 at 1. The defendant contends that *res ipsa loquitur* does not

3   apply to the plaintiffs' cause of action because the issue of causation is too complex in this medical

4   malpractice action, because the alleged negligence is not of the sort traditionally subject to a *res ipsa*

5   *loquitur* analysis, because *res ipsa loquitur* cannot be employed to create an inference of emotional

6   damage occurring over a year after the alleged negligence, and because the surgery would have been

7   performed even if the D-dimer test were accurate. Dkt. 40-1 at 4-5.

8          In a negligence action, the plaintiff bears the burden of producing evidence that the defendant

9   breached its duty of care to the plaintiff and that such breach was the proximate cause of the plaintiff's

10  injury. *See Miller*, 145 Wn.2d at 74 (2001). If there is an excusable lack of evidence with which to

11  establish negligence, the doctrine of *res ipsa loquitur* allows a plaintiff to establish a prima facie case

12  of negligence through circumstantial evidence. *Marshall v. Western Air Lines, Inc.*, 62 Wn. App.

13  251,259 (1991); *Morner v. Union Pac. R. Co.*, 31 Wn.2d 282, 291 (1948). *Res ipsa loquitur* literally

14  means "the thing speaks for itself." *Morner*, 31 Wn.2d at 290. It is merely a rule of evidence allowing

15  the finder of fact to infer negligence from the proof of an injury and the attendant circumstances. *Id*.

16  Negligence cannot be inferred from the mere fact that an injury occurred, however. *Tinder v.*

17  *Nordstrom, Inc.*, 84 Wn. App. 787, 792-93 (1997).

18         Whether *res ipsa loquitur* applies is a question of law. *Id.* at 791. In resolving this question,

19  the court's inquiry is whether there is a reasonable inference of negligence. *Id.* at 792. Because it

20  allows the plaintiff to avoid establishing an otherwise complete prima facie case, courts apply the

21  doctrine "sparingly" and only to "peculiar and exceptional cases . . . where the facts and the demands

22  of justice make its application essential." *Morner*, 31 Wn.2d at 293.

23         If the court determines that *res ipsa loquitur* applies, the defendant has a duty to come

24  forward with exculpatory evidence to overcome the inference of negligence. *Murphy v. Montgomery*

25  *Elevator Co.*, 65 Wn.App. 112, 114 (1992). If a defendant provides "evidence that is *completely*

26  explanatory of how an accident occurred and no other inference is possible that the injury occurred

27  another way," *res ipsa loquitur* is inapplicable. *Pacheco v. Ames*, 149 Wn.2d 431, 440 (2003)

28

ORDER
Page - 4

1   (emphasis in original). Otherwise, the doctrine may apply even though the defendant offers weighty,

2   competent evidence of an alternative explanation. *Id.*

3        Res ipsa loquitur is of questionable assistance to plaintiffs moving for summary judgment.

4   Where the doctrine applies, the finder of fact is permitted, but not required, to infer that the defendant

5   was negligent. *Brauner v. Peterson*, 16 Wn. App. 531, 533 (1976). Therefore, the application of the

6   doctrine does not warrant summary judgment in favor of plaintiffs unless the facts are undisputed.

7   *Rathvon v. Columbia Pac. Airlines*, 30 Wn. App. 193, 205 (1981). At the summary judgment stage,

8   the inference is given effect only until the opposing party presents contradictory evidence. *Id.*

9        If the following three criteria are satisfied, *res ipsa* applies:

10      (1) [T]he occurrence producing the injury must be of a kind which ordinarily does not occur in
    the absence of negligence;

11

12      (2) the injury is caused by an agency or instrumentality within the exclusive control of the
    defendant; and

13      (3) the injury-causing occurrence must not be due to any contribution on the part of the
    plaintiff.

14

15  *Miller*, 145 Wn.2d at 74. Courts recognize three situations in which the first element may be satisfied:

16      (1) When the act causing the injury is so palpably negligent that it may be inferred as a matter
    of law, I.e., leaving foreign objects, sponges, scissors, etc., in the body, or amputation of a

17      wrong member;

18      (2) when the general experience and observation of mankind teaches that the result would not
    be expected without negligence; and

19

20      (3) when proof by experts in an esoteric field creates an inference that negligence caused the
    injuries.

21   *Zukowsky v. Brown*, 79 Wn.2d 586, 595 (1971).

22       The plaintiffs contend that the act causing Ms. Howard's injuries (the misreporting of her D-

23  dimer test results) is palpably negligent and that general experience and observation suggests that her

24  injuries would not be expected without negligence. Dkt. 32-1 at 5-6. The plaintiffs offer expert

25  testimony that the exploratory laparotomy would not have been performed if the D-dimer results had

26  been accurately reported. Dkt. 33 at 3. The defendants have not had an opportunity to depose this

27  proffered expert or review his expert report. Dkt. 40-1 at 4 n.3. Ms. Howard's discharge notes

28

ORDER
Page - 5

1   suggest that the decision to operate was based upon the D-dimer results. Dkt. 32-2, Exh. 1 at 1

2   ("Given the lack of symptoms for a pulmonary embolism, the team opted to work this diagnosis up

3   following the exploratory laparotomy.").

4          The defendant disputes whether the inaccurate reporting of Ms. Howard's D-dimer test result

5   is the cause of Ms. Howard's injuries. The defendant asserts that there is no evidence of injury to Ms.

6   Howard attributable to the delayed treatment of her pulmonary embolism and that the exploratory

7   surgery would have been performed even if the D-dimer report had been accurate. Dkt. 40-2, Exh. A

8   at 5-7. In his deposition, Dr. Bown testified that he would have performed the laparotomy to check

9   for internal bleeding even if he had known that Ms. Howard's D-dimer was 20 because a D-dimer is

10  not a completely accurate test and because the treatment for pulmonary embolism would have

11  worsened Ms. Howard's internal bleeding. Dkt. 40-2 at 7. There is a dispute as to whether performing

12  an exploratory laparotomy is ordinarily contingent upon a patient's D-dimer test results, and the Court

13  should therefore hold that the plaintiffs are not entitled to summary judgment under the doctrine of *res*

14  *ipsa loquitur*.

15         **2. Negligence**

16         In the alternative, the plaintiffs move for summary judgment on the grounds that the

17  negligence elements of duty, breach, and proximate cause are satisfied under traditional negligence

18  principles. The defendant contends that summary judgment is inappropriate because there is a genuine

19  issue of material fact as to whether the alleged negligence is the cause of the plaintiffs' injuries. Dkt.

20  40-1 at 5.

21         First , the plaintiffs offer expert testimony to establish the applicable duty of care. Dkt. 32-1 at

22  7 ("laboratory results should be correctly reported in order to meet this standard"). Dkt. 33 at 3. The

23  defendants have not had an opportunity to depose this proffered expert or review his expert report.

24  Dkt. 40-1 at 4 n.3. Therefore, this evidence does not warrant judgment as a matter of law establishing

25  the duty owed in this case, and the motion should be denied in this respect.

26         Because the defendant admits that the D-dimer was initially misreported, Dkt. 32-2, Exh. 3 at

27  18, the plaintiffs contend that the issue of whether this duty was breached is uncontested and admitted.

28

ORDER
Page - 6

1  Dkt. 32-1 at 8, Dkt. 49 at 2. Because the duty of care owed to the plaintiffs is not yet established, the

2  Court cannot make a definitive ruling on whether that duty was breached.

3        Finally, the plaintiffs maintain that causation is satisfied because the exploratory surgery would

4  not have occurred if the D-dimer test had been accurately reported. Dkt. 32-1 at 8. As noted above,

5  there is a factual dispute regarding causation. In addition, proximate cause is dependent upon evidence

6  of the applicable duty of care and breach thereof, issues that are unresolved at this stage in the

7  proceedings. The Court should therefore deny the motion.

8                                    **III. ORDER**

9        Therefore, it is hereby

10       **ORDERED** that the plaintiffs' Motion for Partial Summary Judgment (Dkt. 32-1) is

11  **DENIED**.

12       The Clerk of the Court is instructed to send uncertified copies of this Order to all counsel of

13  record and to any party appearing *pro se* at said party's last known address.

14       DATED this 11th day of October, 2006.

15

16

17                                    _____
                                      Robert J. Bryan

18                                    United States District Judge

19

20

21

22

23

24

25

26

27

28