UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MEGAN M. HOWARD and CHRISTOPHER S. HOWARD, individually and on behalf of their marital community,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 05-5768 RJB<br><br>ORDER DENYING MOTION FOR RECONSIDERATION |

This matter comes before the Court on the plaintiffs' Motion for Reconsideration. Dkt. 55-1. The Court has considered the documents filed in support of the motion and the file herein.

## I. PROCEDURAL HISTORY

In this negligence action, the Court denied the plaintiffs' Motion for Partial Summary Judgment. Dkt. 52. On September 16, 2006, the plaintiffs filed a Motion for Reconsideration. Dkt 55-1. The plaintiffs allege that the Order Denying Motion for Partial Summary Judgment constitutes manifest error in the following respects: (1) The plaintiffs established the applicable standard of care even though the defendant had not opposed the proffered expert or reviewed his report; (2) the defendant admitted that it breached the standard of care; and (3) the plaintiffs established that the incorrect testing and reporting of the D-dimer test was a proximate cause of the plaintiffs' injuries. Dkt. 55-1 at 2-4.

ORDER
Page - 1

## II. DISCUSSION

Local Rule CR 7(h) provides as follows:

> Motions for reconsideration are disfavored. The court will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence.

Local Rule CR 7(h). The plaintiffs base their motion solely upon the grounds of manifest error.

**A. DUTY OF CARE**

In the Motion for Partial Summary Judgment, the plaintiffs offered the following argument to establish the duty of care:

> Generally, the standard of care for the particular medical treatment at issue must be established by expert testimony. *Miller v. Jacoby,* 145 Wn.2d 65, 72, 33 P.3d 68 (2001) (citing *Harris v. Robert C. Groth, M.D., Inc.,* 99 Wn.2d 438, 449, 663 P.2d 113 (1983)).
>
> "This laboratory reporting error constitutes conduct which falls below community standard, because laboratory results should be correctly reported in order to meet this standard." Declaration of Robert Y. Uyeda, M.D., F.A.C.S., page 1. Through their expert, Plaintiffs have established the standard of care for reporting results of a laboratory test.

Dkt. 32-1 at 7. To rebut this, the defendants contended that Dr. Uyeda's opinion was inextricably linked with the issue of causation because it presupposed that Ms. Howard would not have undergone the exploratory surgery if her D-dimer test had been accurately reported. Dkt. 40-1. The Court did not find the plaintiffs' argument persuasive:

> The defendants have not had an opportunity to depose this proffered expert or review his expert report. Dkt. 40-1 at 4 n.3. Therefore, this evidence does not warrant judgment as a matter of law establishing the duty owed in this case, and the motion should be denied in this respect.

Dkt. 52 at 6.

The plaintiffs allege that this holding constitutes manifest error in four respects: (1) Dr. Uyeda must be deemed competent because the defendant did not challenge his competency; (2) Dr. Uyeda's statement was his professional, not personal, opinion; (3) the expert opinions provided in the plaintiffs' reply are in agreement with Dr. Uyeda's opinion; and (4) as a surgeon, Dr. Uyeda is qualified to render an opinion on the applicable standard of care. Dkt. 55-1 at 3. The plaintiffs rest

these contentions upon *White v. Kent Medical Center, Inc., P.S.*, 61 Wn. App. 163,174-75 (1991), a case in which the plaintiff successfully used expert testimony to *defend against* a motion for summary judgment on the issue of the standard of care.

As the moving party, plaintiffs bore the burden of establishing that there is no genuine issue of material fact as to which standard of care applies. Without questioning the credibility of Dr. Uyeda, the Court held that his statement that the standard of care governing this case "requires the accurate and timely ordering, performance and reporting of laboratory testing and results," without the benefit of questioning or argument from opposing counsel, did not justify judgment as a matter of law. In other words, the statement of Dr. Uyeda did not sufficiently demonstrate that there was no genuine issue of material fact so as to shift the burden of proof to the defendant. The plaintiffs fail to persuade the Court that this holding constitutes manifest error.

The element of causation is sufficiently important in this case, particularly with respect to the question of duty, that it deserves emphasis. Dr. Uyeda states that the national standard of care requires the accurate reporting of laboratory test results. Dkt. 33 at 2, 3. The relevance of this opinion is impliedly dependent upon Dr. Uyeda's conclusion that a physician exercising reasonable care would not perform an exploratory laparotomy on a patient with a D-dimer of 20.0. *See, e.g. id.* at 2 ("[Dr. Bown] clearly relied on the D-dimer report"), 3 ("This serious laboratory error . . . led [the physicians] to perform the unnecessary and contraindicated exploratory laparotomy. . . . [H]ad the correct laboratory test results of Ms. Howard's gravely concerning D-timer test been timely report[ed] . . . the emergency laparotomy would not have been performed."). Therefore, even if the Court were sufficiently persuaded by Dr. Uyeda's statement to require proof from the defendant, the statement is nevertheless unpersuasive because it fails to address the defendant's causation argument. In other words, the reasonableness of inaccurately reporting laboratory test results would apparently have no bearing if a reasonable surgeon would have still proceeded with the surgery if faced with accurate test results.

The plaintiffs' claim for damages further illustrates that the duty of care in this case is dependent upon the element of causation. As noted in the defendant's response, the plaintiffs appear to attribute injury solely to the performance of the exploratory laparotomy and not to the delayed

treatment of Ms. Howard's pulmonary embolism. *But see* Dkt. 49 at 6 ("I believe that a timely diagnosis would have led . . . to earlier treatment with appropriate medical therapy for PE. This more likely than not would have also averted her cardiac arrest."). Their claim would therefore apparently hinge upon whether the performance of the exploratory laparotomy was negligent, and the standard of care offered by the plaintiffs does not aid this inquiry. The Court should therefore deny the motion in this respect.

**B. FEDERAL RULE 56(f)**

The plaintiffs allege that denying their motion on the grounds that the defendant had not yet deposed Dr. Uyeda or reviewed his expert report was manifest error because the defendant did not seek a continuance under Federal Rule 56(f). Federal Rule 56 allows the court to deny or continue a motion for summary judgment if the defending party establishes that it is unable to properly defend the motion:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f). Here, the Court was not persuaded by Dr. Uyeda's declaration. The ruling is based upon the persuasiveness of the plaintiffs' evidence and not upon the ability of the defendant to conduct discovery sufficient to oppose the motion.

**C. BREACH**

In the Motion for Partial Summary Judgment, the plaintiffs contended that judgment as a matter of law on the issue of breach was appropriate. They based this contention upon the defendant's answers to interrogatories admitting that the D-dimer was misreported. Dkt. 32-1 at 8. The reply also cited the defendant's admission that failure to perform the D-dimer testing violated the relevant standard of care. Dkt. 49 at 2. The Court held that summary judgment was inappropriate "because the duty of care owed to the plaintiffs is not yet established." Dkt. 52 at 7. The plaintiffs reiterate that summary judgment is appropriate by virtue of the defendant's admission. Dkt. 55-1 at 3. To give legal effect to the defendant's admission before determining the requisite duty of care would be premature,

1 and the Court should therefore deny the motion.

2 **D. CAUSATION**

3 In the Motion for Partial Summary Judgment, the plaintiffs offered language from Ms. Howard's medical report and Dr. Uyeda's declaration to demonstrate that there was no genuine issue of material fact regarding causation. *See* Dkt. 32-2, Exh. 1 at 1 ("Given the lack of symptoms for a pulmonary embolism, the team opted to work this diagnosis up following the exploratory laparotomy."); Dkt. 33 at 3-4 ("[I]f the correct laboratory result was reported . . . the physicians would not have performed an unnecessary laparotomy."). The defendants offered the surgeon's deposition testimony that the exploratory laparotomy would have been performed even if the D-dimer had been accurately reported. Dkt. 40-1 at 5. Though not labeled as such, this argument disputes actual, but-for causation. In the reply, the plaintiffs cited authority stating that a defendant's negligence need not be the sole proximate cause of the injury. Dkt. 49 at 4 (*citing Rudelson v. U.S.*, 602 F.2d 1326, 1330 (9th Cir. 1979) (intervening negligence was foreseeable and therefore did not break the chain of causation); *Mason v. Bitton*, 85 Wn.2d 321, 326 (1975) ("[I]f two individuals commit independent acts of negligence which concur to produce the proximate cause . . . each is liable as if solely responsible . . . ."); *Smith v. Acme Paving Co.*, 16 Wn. App. 389, 396 (1976) ("Only when the intervening negligence is so highly extraordinary or unexpected that it can be said to fall without the realm of reasonable foreseeability as a matter of law, will it be held to supersede defendant's negligence.")). The plaintiffs also offered additional deposition testimony that the D-dimer result was part of the surgeon's decision process and additional expert opinion that the surgery was based upon the inaccurate D-dimer result. Dkt. 49 at 4-6. This evidence, offered in the reply, was not considered by the Court because the defendants did not have an opportunity to respond. *See* Dkt. 53 (Order Denying Motion for Leave to File Surreply Brief); *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (""[w]here new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the [non-]movant an opportunity to respond.").

27 The Court held that there was a factual dispute regarding causation and that proximate cause was dependent upon evidence of the applicable duty of care and breach thereof. Proximate cause has

two prongs: cause in fact and legal causation. *See Kim v. Budget Rent A Car Systems, Inc.*, 143 Wn.2d 190, 203-04 (2001). Cause in fact, also termed 'but-for causation,' requires that the defendant's actions produce consequences that would not have resulted if the defendant's action had not occurred. *Hertog v. City of Seattle*, 138 Wn.2d 265, 282-83 (1999). Legal cause is an issue of law and is a more fluid concept than cause in fact. *Kim*, 143 Wn.2d at 204. The question for the court is whether the connection between the defendant's action and the ultimate consequence is too remote or insubstantial to render the defendant liable. *Id.* Here, there is conflicting evidence as to whether Ms. Howard's injuries would have occurred if her D-dimer results had been accurately reported, and the motion should therefore be denied.

The Court's Order (Dkt. 52) did not foreclose the filing of additional dispositive motions after the record has been more fully developed.

### III. ORDER

Therefore, it is hereby

**ORDERED** that plaintiffs' Motion for Reconsideration (Dkt. 55-1) is **DENIED**.

The Clerk of the Court is instructed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 17th day of October, 2006.

                                                       Robert J. Bryan
                                                       United States District Judge